# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **VOLVO FINANCIAL SERVICES,** | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. 1:20-CV-721-LY |
| | § | |
| **MCCLENNY MOSELEY &** | § | |
| **ASSOCIATES,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff's Motion for Summary Judgment Against Defendant McClenny Moseley & Associates, filed January 25, 2021 (Dkt. 37), and the associated response and reply briefs. The District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 39.

## I.  Background

Plaintiff Volvo Financial Services ("Volvo Financial")[1] provides financial services to Volvo consumers and retailers throughout the United States. Defendant Erik M. Finholm ("Finholm"), a Texas resident, is the owner and operator of two trucking companies: Finholm Transportation ("FT") and EXP Transportation Solutions ("EXP") (collectively, the "Finholm Defendants"). Dkt. 1 ¶ 8.

---

[1] Volvo Financial Services is a division of Volvo Financial Services U.S., which is a Delaware limited liability company with its principal place of business in Greensboro, North Carolina. Dkt. 1 ¶ 1.

Volvo Financial alleges that between 2016 and 2018, it entered into several contracts with Finholm[2] (the "Contracts") in which Volvo Financial agreed to provide financing for Finholm's purchase of seven tractor-trailer trucks. At issue here is the second contract between Volvo Financial and Finholm[3] ("Volvo-Finholm Second Contract"),[4] in which Finholm agreed to pay Volvo Financial approximately $190,000 to finance a 2016 Volvo VNL64T780 truck (the "Collateral"). Volvo Financial alleges that under all of the Contracts, Finholm agreed "to pay in full the principal amount borrowed with interest" to Volvo Financial. Dkt. 37-1 at 14. Volvo Financial also alleges that Finholm agreed that

> in order to secure payment of the indebtedness and all other debts and obligations at any time owing from Borrower to Lender and its affiliates, Borrower hereby grants to Lender . . . a security interest in and to the Equipment, together with all present and future attachments . . . and proceeds, including amounts payable under any insurance policies (the "Collateral").

*Id.* Volvo Financial alleges that Finholm also agreed to appoint Volvo Financial as an attorney-in-fact to execute and endorse all checks or drafts in his name to collect under any insurance covering the Collateral, and agreed that Volvo Financial "may apply insurance proceeds to the Indebtedness or any other obligation of Borrower to Lender as Lender deems appropriate." *Id.*

Volvo Financial alleges that Finholm has defaulted on his payment and other obligations under all of the Contracts and owes it a total of $493,882.97 plus interest. Dkt. 1 ¶ 37. Regarding the Volvo-Finholm Second Contract, Volvo Financial alleges that Finholm owes it $111,357.63 plus interest. Volvo Financial contends that Finholm has refused to pay it for any of this debt despite multiple notices of default.

---

[2] Dkt. 37-1.

[3] VIN# 4CVNC9EH3GN95076.

[4] Dkt. 37-1 at 8-12.

2

On January 22, 2019, Finholm was involved in a traffic accident in Colorado that resulted in the total loss of the truck ("Total Loss"). Finholm subsequently filed an insurance claim for the loss with its liability insurer, Lloyds of London ("Lloyds"), but was denied coverage. On May 28, 2019, Finholm retained Defendant, the law firm McClenny Moseley & Associates ("MMA"), on a contingent fee basis, to sue Lloyds over its decision to deny Finholm's insurance claim. *See* Dkt. 38-5 ("MMA-Finholm Contract"). The MMA-Finholm Contract required Finholm to pay MMA "35% of the total sums collected plus reasonable expenses." *Id.* at 3.

In September 2019, Finholm and Lloyds settled their insurance coverage suit. In exchange for Finholm's release of claims against Lloyds, Lloyds mailed MMA two checks totaling $137,500 made payable to "VFS US LLC, ERIK M FINHOLM DBA FINHOLM TRANSPORTATION AND MCCLENNY, MOSELEY AND ASSOICATES" (the "Checks"). *Id.* at 3-4. The letter to MMA from Lloyds enclosed with the Checks informed MMA that the Checks would not be honored by the bank unless the Checks were "properly endorsed by **ALL** payees." *Id.* at 1.

Subsequently, MMA asked Volvo Financial to endorse the Checks and return them to MMA so it could deduct Finholm's attorney's fees and expenses from the insurance proceeds. Volvo Financial refused, instead demanding that MMA endorse the Checks and send them back to Volvo Financial so it could deduct Finholm's outstanding debt from the insurance proceeds.

Volvo Financial argues that, pursuant to the Contracts, it has a valid security interest/lien on the insurance proceeds because Finholm owes it more than the amount of the insurance proceeds. MMA disagrees, contending that it has a valid lien against the insurance proceeds based on the MMA-Finholm Contract. Volvo Financial contends that MMA must collect its contingency fee directly from Finholm, not from Volvo Financial.

On July 6, 2020, Volvo Financial filed this case against Finholm, FT, EXP, and MMA. Volvo alleged breach of contract against the Finholm Defendants and seeks a declaratory judgment action against MMA regarding the priority of its lien on the insurance proceeds pursuant to Texas Civil Practices & Remedies Code 37.001 and 28 U.S.C. § 2201.

Because the Finholm Defendants failed to appear, answer, or defend, Volvo Financial moved for default judgment. Dkt. 21. On January 7, 2021, the District Court granted the motion and entered a Default Judgment against Finholm, FT, and EXP, ordering Volvo Financial to recover $215,294.25 from EXP; $288,160.50 from FT; and $503,454 from Finholm, as well as $11,801.90 in attorney's fees and $799.80 in costs. Dkt. 36.

Volvo Financial now moves for summary judgment on its declaratory judgment claim against MMA, arguing that the evidence demonstrates as a matter of law that it holds a valid lien on the insurance proceeds superior to any lien asserted by MMA. Volvo Financial also requests attorney's fees and costs, pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code. MMA contends that Volvo Financial has failed to sustain its burden to show that it is entitled to summary judgment, and that its lien is superior to Volvo Financial's.

## II.   Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp.*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(a)).

If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But if the movant meet this burden, the nonmovant must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

As stated above, Volvo Financial seeks a declaratory judgment against MMA pursuant to Texas Civil Practices & Remedies Code 37.001 and 28 U.S.C. § 2201. Volvo Financial asks the Court to "declare the parties' rights, status, and legal relations" for the Checks as the insurance proceeds for the loss of the Collateral securing payment of the Contracts pursuant to the Volvo-Finholm Second Contract, and to enter a declaratory judgment stating the following:

(1) Volvo Financial holds a valid, superior lien in the Collateral, which includes the Checks as insurance proceeds in the total amount of $137,500.00 payable under the insurance policy for the loss of the Collateral;

(2) Volvo Financial is owed an outstanding debt due under the Contracts from Finholm that exceeds the amount of the Checks;

(3) The Checks do not belong to Finholm until the full amount of the outstanding debt due to Volvo Financial by Finholm under the Contracts has been paid in full;

(4) Volvo Financial has not been paid the full amount of the outstanding debt due under the Contracts by Finholm and EXP;

(5) Neither Finholm nor EXP has any right to the Checks;

(6) MMA has no right to the Checks; and

(7) MMA may not seek its contingency fee from the Checks or any insurance proceeds or other amounts due under any of the Contracts, including the Volvo-Finholm Second Contract, until such Contracts have been paid in full.

Dkt. 1 ¶ 58.

Volvo Financial argues that it is entitled to summary judgment because the evidence demonstrates as a matter of law that it holds "a lien superior to any lien asserted by MMA" on the insurance proceeds. Specifically, Volvo Financial argues that the following facts are "undisputed and dispositive":

(1) Volvo Financial has a properly perfected security interest in the Collateral that is the subject of the Total Loss;

6

    (2) Volvo Financial's lien on the Collateral extends to the insurance proceeds from the Total Loss (the "Total Loss Proceeds");

    (3) Volvo Financial's lien on the Total Loss Proceeds secures all the indebtedness under the Contracts, not just the Volvo-Finholm Second Contract;

    (4) the attorney's lien asserted by MMA postdates Volvo Financial's lien by two years; and

    (5) Volvo Financial did not consent to MMA's alleged lien.

Dkt. 37 at 5.

Volvo Financial's summary judgment evidence purporting to prove these "facts" consists of (1) an unsworn declaration from Tara Maxey, Volvo Financial's Senior Litigation and Bankruptcy Specialist, repeating the above allegations;[5] (2) illegible copies of the Contracts and Certificates of Title for the trucks;[6] and (3) twelve pages of the North Carolina Uniform Commercial Code on secured transactions.[7] Volvo Financial, however, fails to provide any legal analysis or case law to demonstrate how this evidence proves any of its allegations. *See* Dkt. 37 at 5-7.

"[U]nsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A party seeking summary judgment "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Just as "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," it also does not require the Court to sift through the record in search of evidence to support a party's motion for summary judgment. *Ragas*, 136 F.3d 458.

---

[5] Dkt. 37-1 at 2-5.

[6] *Id.* at 8-23.

[7] Dkt. 37-2 at 2-13. Volvo Financial contends that North Carolina law applies to the Contracts based on a choice of law provision, but Texas law determines the priority of the liens. See Dkt. 37 at 5 n.11. However, Volvo Financial fails to cite any Texas law.

Because Volvo Financial failed to explain how the record evidence proves any of its allegations or to provide any legal analysis in support of its Motion, it has not sustained its burden under Rule 56(c). *See Celotex Corp.*, 477 U.S. at 323; *Little*, 37 F.3d at 1075.

## IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment Against Defendant McClenny Moseley & Associates (Dkt. 37). **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 9, 2021.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE